**PARAGON RESOURCES, INC.,**
**Plaintiff-Appellee,**

v.

**NATIONAL FUEL GAS DISTRIBUTION CORPORATION, Defendant-Appellant.**

**No. 85–4530.**

United States Court of Appeals,
Fifth Circuit.

Aug. 20, 1986.

Cook, Yancey, King & Galloway, F. Drake Lee, Jr., Shreveport, La., Heino H. Prahl, Buffalo, N.Y., for defendant-appellant.

Blanchard, Walker, O'Quin & Roberts, Wm. Timothy Allen, III, Shreveport, La., Kavinoky & Cook, Allan R. Lipman, Buffalo, N.Y., for plaintiff-appellee.

Before GARWOOD and HILL, Circuit Judges, and WILL,* Senior District Judge.

WILL, Senior District Judge:

Defendant-appellant, National Fuel Gas Distribution Corp. ("National") appeals from a declaratory judgment in favor of plaintiff-appellee, Paragon Resources, Inc. ("Paragon"). This is the third time this court has reviewed the controversy between the parties and the second time it has reviewed the District Court's declaratory judgment rulings.

In 1981, this case, along with a companion case both originally filed in 1978, was tried by the District Court. The court's ruling in the companion case was affirmed in 1983 ("Paragon I"). *Paragon Resources, Inc. v. National Fuel Gas Distribution Co.,* 695 F.2d 991 (5th Cir.1983). The declaratory judgment ruling was reviewed and reversed in 1984 ("Paragon II"). *Paragon Resources, Inc. v. National Fuel Gas Distribution Corp.,* 723 F.2d 419 (5th Cir.1984). The current appeal is from the District Court's resolution on remand of the declaratory judgment issue pursuant to the mandate of *Paragon II.* We affirm.

## I. THE FACTS

The parties entered into five separate but related agreements with respect to National's purchasing gas produced from wells operated by Paragon. The initial Gas Purchase Agreement (GPA), dated July 1, 1974, obligated National to take or pay for 100% of the delivery capacity of Paragon's wells during the winter months (November-April) and up to 50% of the delivery capacity, at Paragon's option, during the summer months (May-October). To the extent National paid for gas it did not take, it was entitled to recoup or take the gas at a future date with no additional charge either for storage or any increase in gas prices.

In the second agreement, made in 1976, the National Fuel Gas Distribution Agreement (NFGDA), Paragon waived the take-or-pay provisions of the GPA so far as the

* Senior District Judge of the Northern District of Illinois, sitting by designation.

interests which it owned but not on behalf of revenue interests controlled by Paragon but owned by others ("non-Paragon interests"). More or less contemporaneously, the parties entered into three more agreements which together with the parties' conduct, Paragon contends, reflect an agreement that the waiver of the take-or-pay provisions was intended to be only temporary while National contends that the NFGDA waiver was permanent and nothing in the subsequent agreements or conduct altered it.

By way of further background, it is clear that the original take-or-pay commitment was intended to ensure that Paragon would have a cash flow from the wells to enable it to operate and develop additional wells. In 1976, Paragon negotiated with General Electric Credit Corporation ("GECC") for a substantial loan. As part of the loan arrangement, National's parent corporation guaranteed the loan and Paragon, on its behalf but not on behalf of the non-Paragon interests, waived, among other agreements, the take-or-pay provisions of the GPA.

Certain of Paragon's agreements in the NFGDA are specifically limited to the earlier of the time when National's parent was released and discharged from the guaranty or Paragon paid off the loan and satisfied all of its obligations to GECC. The take-or-pay waiver was not among those specifically so conditioned. In lieu of the take-or-pay provision, National agreed to pay Paragon a minimum of $1.3 million a year again with a provision for recoupment if payments exceeded the purchase price of gas taken.

The GECC loan was paid in full on December 19, 1977. Paragon contends that at that time the waiver of the take-or-pay provision expired and National is again bound by it. National contends that the waiver was permanent and, while Paragon is obligated to sell to it, National has no obligation to purchase or pay for any specific quantity of gas.

## II. THE DISTRICT COURT'S FINDINGS

In his extended oral opinion of April 16, 1981, the trial judge carefully reviewed the history of the relations and negotiations between the parties, the depositions of various officers and employees of each, a substantial number of documents of each and concluded, page 33 of the transcript of his ruling, "I think such confusion is hardly indicative of any clear understanding between the parties on this issue." He went on to find (Tr. 44):

> The testimony reflects to me that neither the plaintiff nor the defendant bargained for a permanent waiver of Take or Pay. I am buttressed in that by the singular uniformity, with one exception, of the officers of the defendant corporation concerning [sic] the waiver was only for so long as that debt was being guaranteed by National.

He concluded (Tr. 47):

> The waiver was not considered by the parties to be a permanent waiver of Take or Pay.

Accordingly, he entered a declaratory judgment for the plaintiff, Paragon.

This court in *Paragon II*, reviewing his findings and decision, held that, absent a specific initial finding that the take-or-pay waiver when placed in context and without regard to the parties' intent was ambiguous, Judge Stagg had erred in considering all the evidence as to their intent in determining the commercial content of their agreement. The court pointed out that, under *Paragon I*, "evidence of subjective intent is not to be considered in addition to evidence of course of dealing, trade usage, or course of performance unless the court finds the contract ambiguous after looking at such Code evidence." *Paragon II*, 723 F.2d at 422. Accordingly, it remanded the case "for treatment in light of the principles outlined in *Paragon I*." *Id.* In passing, the court observed:

> While from our view it is difficult to find that the otherwise explicit contract is in fact ambiguous when placed in context, we think it unwise to decide that ques-

tion on the voluminous, cold record before us. . . .

*Id.*

*Paragon I* outlined as the applicable principles the provisions of the Uniform Commercial Code (U.C.C.) in effect in the State of New York, whose law governs this contract. This involves a three-step inquiry:

1. Were the express contract terms ambiguous?

2. If not, are they ambiguous after considering evidence of course of dealing, usage of trade, and course of performance?

3. If the express contract terms by themselves are ambiguous, or if the terms are ambiguous when course of dealing, usage of trade, and course of performance are considered, . . . what is the meaning of the contract in the light of *all* extrinsic evidence?

The first inquiry presents a question of law. The third inquiry presents a question of fact. The thorny problem is classifying the second inquiry as one of law or fact. As will be seen, we do not resolve this issue because we need not do so.

*Paragon I,* 695 F.2d at 996.

In carrying out the *Paragon II* mandate on remand, Judge Stagg first examined the applicable provisions of the GPA and the NFGDA. He concluded that those agreements standing alone suggested that the parties had contracted for a permanent waiver. He pointed out, however, that those agreements did not constitute the entire agreement between the parties and could not be read independently of the other three agreements, particularly the amendment agreement and the settlement agreement. He reiterated what he had said in his earlier bench ruling that while the NFGDA did not apply to the non-Paragon interests, the amendment document applied only to the non-Paragon interests and the settlement agreement, executed simultaneously, clearly provided that upon payment of the GECC loan, the Paragon interests would, like the non-Paragon interests, be subject to the provisions of the amend-

ment agreement. He concluded that, if all the agreements were read together, it was arguable that there was either (1) a permanent waiver or (2) a permanent waiver followed by a regrant of the take-or-pay provision effective May 1, 1976 or (3) that the waiver was only temporary.

Citing a well-recognized definition of ambiguous, he found that the only reasonable conclusion was that the contract in its entirety as reflected in the multiple agreements was ambiguous. Having made a specific finding of ambiguity, he then stated that he had reviewed the extrinsic evidence as to what the parties intended. In light of the entire record, including the depositions and documents of the parties, and the arguments of counsel, he found that "the conclusion compelled by logical analysis is that the intent of the contract was to provide for a temporary waiver."

■ Without indulging in an extended analysis of the record, it is apparent that Judge Stagg's findings and conclusion are correct. An examination of the five agreements, particularly the four which deal with the take-or-pay provision, supports the conclusion that the agreement between the parties was indeed ambiguous. The difference in the arrangements as between the Paragon and non-Paragon interests, coupled with the provision that upon payment of the GECC loan the Paragon interests would be subject to the same provisions as the non-Paragon interests, raises an inference that the take-or-pay provisions of the GPA would be applicable to both sets of interests after National's parent was released from its guaranty. That inference is, of course, inconsistent with a permanent waiver of take-or-pay and the agreement is therefore ambiguous.

Whether this was a finding under the first step of the U.C.C. analysis that the express contract terms when read in their entirety are ambiguous, or under step two, that they are ambiguous after considering evidence of course of dealing, usage of trade and course of performance but not the parties intent, is arguable but immate-

rial. Similarly, whether it was a finding of fact or law is also immaterial since we have found it to be correct.

■ Judge Stagg's conclusion, the third step U.C.C. finding which this court held in *Paragon I* to be a finding of fact, that the parties intended the waiver to be only temporary, is not clearly erroneous, the standard by which we must judge it. *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Kerr-McGee Chemical Corp. v. Harris*, 442 F.2d 1109, 1113 (5th Cir.1971). As he pointed out in his April 16, 1981 bench ruling, the documents and the recollection testimony of the participants on both sides reflect, with one exception, either an understanding that the waiver was temporary or no understanding at all on the subject.

Moreover, the contention that the parties intended the waiver to be permanent is inconsistent with the basic arrangements between them. Initially, the take-or-pay provision was intended to ensure Paragon of a regular source of income. When the GECC loan arrangement with National's parent as guarantor was entered into, National agreed to pay Paragon a minimum of $1.3 million a year until the GECC loan was retired again assuring Paragon substantial income. If the take-or-pay provision was permanently waived and National could purchase as much or as little gas as it chose from Paragon, the payment of the GECC loan would leave Paragon with no assured income. Nothing in the documents or recollections of the negotiating parties suggests that they intended such a drastic change in their arrangements.

## III. CONCLUSION

As required by this court's mandate, the trial judge on remand first examined the five documents comprising the agreement between the parties to ascertain whether or not the express contract terms were ambiguous. He found that they were. That finding, whether of fact or law, is supported by substantial evidence and is correct. He then, as mandated, reviewed the record, including the relevant documents

and depositions to determine the parties intent. He concluded that the evidence established they intended only a temporary waiver to be effective until the GECC loan was repaid. That finding of fact is supported by substantial evidence and is not clearly erroneous. The judgment of the district court is affirmed.